# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ANASTACIO AVILA, ) | Case No.: 10-CV-05485-LHK |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | ORDER DENYING MOTION FOR |
| COUNTRYWIDE HOME LOANS, ndba BAC ) | TEMPORARY RESTRAINING ORDER |
| HOME LOANS SERVICING LP, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, proceeding pro se, filed a complaint and submitted an *ex parte* motion for a Temporary Restraining Order (TRO) on December 3, 2010. *See* Compl. (Dkt. No. 1), TRO Mot. (Dkt. No. 3). The TRO Motion seeks to enjoin a non-judicial foreclosure sale of Plaintiff's primary residence, located at 2789 Illinois Street, East Palo Alto, California, 94303. TRO Mot. at ¶ 3. The sale has been noticed for December 17, 2010. TRO Mot. at ¶16. Based on the documents submitted by the Plaintiff, the Court finds that issuance of a TRO without notice to Defendant Countrywide Home Loans ("Countrywide") is not justified in this case.[1] Accordingly, the Court DENIES Plaintiff's request, for the reasons set forth below.

---

[1] Pursuant to Federal Rule of Civil Procedure 65(b) and Civil Local Rule 65-1, the plaintiff must serve the defendant with a motion for TRO before the Court can grant it, unless the plaintiff has submitted a sworn affidavit indicating that "immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition" and the moving party "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Should the Plaintiff wish to renew this motion, the moving papers must be served on Defendant before the Court will consider it.

1
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

## I. BACKGROUND

In the sparse facts alleged in the Complaint, the Plaintiff states that he "entered into an express contract with Defendants . . . consisting of a promissory note . . . and a lien document." Although the Complaint states that these documents are attached as exhibits A and B, only the note appears to be attached to the Complaint. *See* Compl. Ex. A-B ("Note"). The Note is dated August 27, 2007, and lists 2789 Illinois Street, East Palo Alto, California, 94303 as the property address ("Property"). *Id*. The Note states that the borrower will pay $365,000 in exchange for the loan he has received from Lender Countrywide Bank. The Note also references a Security Instrument or Deed of Trust, dated the same day as the Note, but it appears this is not attached to the Complaint. *Id*. The Note is unsigned, although there is a signature line marked "Borrower" with "Anastacio P. Avila" typed below it. In the TRO Motion, the Plaintiff refers to the Note as a refinance transaction. TRO Mot. at ¶ 3. Other documents attached to the Complaint are a Final Truth In Lending Disclosure Statement, dated August 27, 2007; a notice titled "Interest-Only Feature Disclosure," dated August 27, 2007; a Final Settlement Statement listing a settlement date of August 31, 2007; and a Notice of Trustee's Sale, undated, setting a non-judicial foreclosure sale for December 17, 2010 ("Notice of Sale").

## II. LEGAL STANDARD

Because Plaintiff seeks issuance of a TRO without notice to the Defendant, Plaintiff must satisfy both the general standard for temporary restraining orders and the requirements for *ex parte* orders set forth in Federal Rule of Civil Procedure 65(b). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A plaintiff seeking a preliminary injunction must make a four-fold showing: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008); *Amer. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has recently clarified that

"the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*." *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052 (9th Cir. 2010). This test states that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* Plaintiffs must still meet the other *Winter* factors. *Id.*

In addition, a plaintiff seeking issuance of a TRO without notice to the defendant must satisfy two further requirements: (1) "specific facts in an affidavit or a verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) the applicant's attorney must certify in writing the reasons why notice should not be required. Fed. R. Civ. Pro. 65(b)(1). The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an *ex parte* TRO. *Reno Air Racing Assoc., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Such circumstances include "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (quoting *Amer. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir.1984)).

### III. ANALYSIS

Plaintiff is proceeding *pro se*. Therefore, the Court has construed the allegations in his Complaint and TRO Motion liberally, in order to determine what claims are asserted, so that the likely success of those claims can be determined. *See Hebbe v. Pliler*, No. 07-17265, 2010 U.S. App. LEXIS 24019 at *10 (9th Cir. Nov. 19, 2010). Plaintiff references eight different categories of claims in his Complaint and TRO Motion. These include 1) violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq*. (separately codified as Regulation Z, 12 C.F.R. § 226.1 *et seq*.; 2) violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et seq*.; 3) fraud by misstatements and by concealment, including fraud against U.S. taxpayers and backers of mortgage-backed derivative securities; 4) breach of the covenant of good faith and fair dealing; 5) breach of fiduciary duty; 6) negligence; 7) violations of California's Unfair Competition law, California Business and Professions Code § 17200 *et seq*., based on unspecified

3

violations of other laws; and 8) intentional infliction of emotional distress.  The Court will address these claims in turn.

      **a.**      **TILA Claims**

Plaintiff has alleged or attempted to allege numerous violations of TILA and Regulation Z, including failure to make timely disclosures three days before closing per 12 C.F.R. § 226.31(c)(1); changing the terms of the loan without sufficient notice, in violation of 12 C.F.R. § 226.32(i); failure to identify estimated costs in violation of 12 C.F.R. § 226.31(d)(2); failure to properly compute the per-diem interest per 12 C.F.R. § 226.31(d)(3); failure to provide, or provision of an inaccurate, Notice of Right to Rescind in violation of 12 C.F.R. § 226.23.  In the TRO Motion and supporting papers, and in the Complaint, Plaintiff provides little more than conclusory statements that these sections were violated.  The information provided is not enough to raise a serious question that Plaintiff will succeed on the merits of his TILA claims.

Moreover, Plaintiff claims that he is entitled to both rescission of the loan as well as damages based on these TILA violations.  However, claims for rescission under TILA expire "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  15 U.S.C. § 1635(f).  The three-year period is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (holding that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.")

Because the loan documents indicate that the loan was signed at the end of August, 2007, and Plaintiff did not file this case until December, 2010, over three years later, it appears that Plaintiff's claims for rescission under TILA are time-barred.

Damages claims under TILA have a one-year statute of limitations that runs from the date the loan documents are signed.  15 U.S.C. § 1640(e).  Therefore, absent tolling, Plaintiff's TILA damages claims expired in August, 2008.  Equitable tolling of TILA damages claims can extend the one-year limitations period, but such tolling is only available if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  Plaintiff has alleged that the statute of limitations should be tolled because he "had no notice of wrong doing until the improprieties of the

4
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

real estate market were finally made public in the popular media." Compl. ¶ 48.  Plaintiff has not established that he acted with diligence to discover the basis of his TILA claims, most of which should have been apparent at the time the loan documents were signed.  Accordingly, the Court finds that Plaintiff has little likelihood of success on the merits of his TILA damages claims, as these claims may well be time-barred.

Therefore, the Court concludes that Plaintiff has failed to demonstrate a likelihood of success on the merits of his TILA claims.

### b. RESPA Claims

Without citing any specific statutory provision, Plaintiff presents a laundry-list of claims termed "RESPA Penalties."  The list begins "From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows: a) Good Faith Estimate not within limits b) No HUD-1 Booklet . . . i) Financial Privacy Act Disclosure j) Equal Credit Reporting Act Disclosure . . . ."  Compl. ¶45.  The Plaintiff provides no other detail regarding what provisions of RESPA were violated or what act by the Defendant violated RESPA.  Plaintiff has provided no additional information regarding these claims in the TRO Motion.  Given the scant information provided, the Court is unable to say that the Plaintiff is likely to succeed on the merits of any RESPA claims.

In addition, all private causes of action under RESPA are limited by a one or three year statute of limitations, pursuant to 12 U.S.C. § 2614.  As with his TILA claims, Plaintiff does not allege any diligence on his own part that might potentially extend the statute of limitations through equitable tolling.  *See*, *e.g.*, *Sakugawa v. IndyMac Bank, F.S.B.*, No. 10-00504 JMS/LEK, 2010 U.S. Dist. LEXIS 125096 at *11-12 (D. Haw. Nov. 24, 2010) (dismissing RESPA claims as time-barred for failure to allege diligence in pursuing them).

### c. Fraud-Based Claims

Plaintiff brings a number of claims sounding in fraud.  These include "common-law fraud," "fraud by concealment," "fraud against US taxpayers" by setting up a loan that was sure to fail so that it could claim the loss for tax purposes, "fraud against derivative backers" by "betting on the failure of the promissory note the lender designed to default."  In order to allege fraud in a federal

5
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

pleading, a plaintiff must meet the requirements of Federal Rule of Civil Procedure 9(b). This requires that the party alleging fraud must state "with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged. In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal citations and quotations omitted).

In the complaint, the Plaintiff alleges very generally that Countrywide, and other parties not named as Defendants, misrepresented the true value of the property and the volatile nature of the real estate market in order to induce him to agree to the loan, failed to tell him that he qualified for a "less expensive loan," and failed to explain that all closing fees and costs were legal. These allegations are simply insufficient to state a claim for fraud under the Federal Rules standard. Plaintiff does not identify what *specific* false or misleading statements were made to him, who made them, when or how they were made, and he does not explain why any such statement should be considered false or misleading.

Because the Court finds that Plaintiff has not met the pleading standard to allege fraud, it follows that, based on the information in the Complaint and the TRO Motion, there is no likelihood of success on the merits of Plaintiff's fraud-based claims.

### d. Breach of the Covenant of Good Faith and Fair Dealing

In the Complaint, Plaintiff alleges that Defendant Countrywide and other parties violated the Covenant of Good Faith and Fair Dealing. In support of this claim, Plaintiff states that Defendants "(1) Failed to provide all of the proper disclosures; (2) Failed to provide accurate Right to cancel Notices; (3) Placed Plaintiff into the current loan product without regard for other more affordable products; (4) Placed Plaintiff into a loan without following proper underwriting standards; (5) Failed to disclose to Plaintiff that she [sic] was going to default because of the loan being unaffordable (6) Failed to perform valid and / or properly documented substitutions and assignments so that Plaintiff could ascertain her [sic] rights and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the servicing of her [sic] loan and the

6
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

existence and content of relevant documents." The Court finds that these allegations are too vague to support a finding of likelihood of success on the merits.

Under California law, a claim for breach of the covenant of good faith and fair dealing requires that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting, and that the plaintiff's damages resulted from the defendant's actions. *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968); *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745, (2001); *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372-73, (1992). "[T]he implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose. *Carma Developers*, 2 Cal. 4th at 373.

Plaintiff has failed to show any likelihood that the vaguely-alleged acts of Countrywide deprived him of a benefit actually conferred or contemplated by the contract, in violation of any reasonable expectation. For example, Plaintiff alleges in conclusory fashion that Defendant breached the covenant by "plac[ing] plaintiff into the loan without regard for more affordable products." But Plaintiff does not show that the expectation that he would be offered the most affordable loan product was reasonable, or a benefit contemplated by his contract with Countrywide. Generally, "a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender," and therefore no duty to provide the most affordable possible loan. *Oaks Mgmt. Corp. v. Sup. Ct.*, 145 Cal. App. 4th 453, 466 (2006); *see also Rivera v. BAC Home Loans Servicing, L.P.*, No. C 10-02439 RS, 2010 U.S. Dist. LEXIS 80294 at *16-17 (N.D. Cal. July 9, 2010) (denying request for preliminary injunction based on similar claim). Even construed liberally, Plaintiff's bare and boilerplate allegations, made without any factual support, do not demonstrate a likelihood of success on the merits.

7

Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

### e. Breach of Fiduciary Duty and Negligence

Plaintiff alleges that Countrywide acted as both lender and broker, and attempts to state claims for breach of fiduciary duty and negligence against Countrywide in both capacities. Plaintiff alleges that Countrywide "owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under to . . . provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as 'yield spread premiums' to mortgage Agents and loan officers." Compl. ¶ 81. However, as referenced in the preceding section, lenders do not owe any fiduciary duty to borrowers. "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Sav. and Loan Ass'n.*, 231 Cal. App. 3d 1089, 1093 n.1 (1991). In addition, as discussed above, Plaintiff has failed to allege sufficient facts to demonstrate that he is likely to succeed on his underlying TILA and RESPA claims, which form the basis of his claim for breach of the duty of due care. Thus, there is little or no likelihood that Plaintiff's claims of breach of fiduciary duty, or negligence, can succeed on the merits as to Countrywide as lender.

Real estate agents do owe a fiduciary duty to "disclose all material facts which might affect [a buyer's] decision with regard to [a] transaction." *Pepitone v. Russo*, 64 Cal. App. 3d 685, 688 (1976). Accepting Plaintiff's allegation that Countrywide served as a broker as well as lender in the transaction leading to execution of the Note, Plaintiff's claims for breach of fiduciary duty are too vague to demonstrate a likelihood of success on this claim. Plaintiff claims that he "engaged Defendant as their [sic] agent for obtaining a loan to purchase their [sic] home." However, Plaintiff provides no supporting detail or allegation indicating that he actually entered a contract for brokerage services with Countrywide.

Furthermore, as with Plaintiff's other claims, his allegations simply list a number of possible fiduciary breaches without explaining how any of these breaches actually came about. Plaintiff states that as broker, Countrywide "a. Obtained mortgage loans with unfavorable terms; b. Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question; c. By accepting funds from Lender in the form of

8
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

kickbacks in return for referring Plaintiff to the other Lender; d. By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs [sic] to afford." Compl. ¶ 63. Some of these claims contradict other facts alleged. For example, it is not clear how Countrywide could accept kickbacks from itself. As with Plaintiff's other allegations, the factual detail provided is insufficient to allow the Court to find a likelihood of success on the breach of fiduciary duty claims.

### f. California's Unfair Competition Law

California's Unfair Competition Law prohibits business practices that are "unfair, unlawful or fraudulent." Cal. Bus. & Prof. Code. § 17200 (UCL). Plaintiff alleges that he has "sufficiently plead numerous violations of various consumer protection laws to establish a claim under California Business and Professions code 17200." Compl. ¶ 106. Presumably, Plaintiff intends to state a claim under the "unlawful" prong of the UCL based on the alleged TILA and RESPA violations. Plaintiff cannot show a likelihood of success on this claim for the same reasons that Plaintiff's underlying claims of RESPA and TILA violations are not likely to succeed. Plaintiff has not provided sufficient factual allegations to raise a likelihood of success on his RESPA or TILA claims, and it appears that these claims are time-barred. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 n.3 (9th Cir. 2008) (holding that plaintiffs may not extend the TILA statute of limitations by pleading a UCL claim based on a time-barred TILA claim). Therefore, the Court finds Plaintiff has not shown a likelihood of success on his UCL claim.

### g. Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Odinma v. Aurora Loan Servs.*, No. C-09-4674 EDL, 2010 U.S. Dist. LEXIS 28347 at * (N.D. Cal. Mar. 23, 2010) (citing *Trerice v. Blue Cross of Cal.*, 209 Cal.App.3d 878, 883, (1989); *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982). Outrageous conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id*.

1   None of Defendant's acts, as alleged by Plaintiff, qualify as outrageous. *See Sierra-Bay Fed. Land*

2   *Bank Ass'n v. Sup. Ct.*, 227 Cal. App. 3d 318, 334 (1991) ("It is simply not tortious for a

3   commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not

4   paid."). Accordingly, the Court finds that Plaintiff has little change of success on the merits of this

5   claim.

### h.  Quiet Title

Finally, the Plaintiff claims he is entitled to "quiet title" to the Property. However, under California law, a borrower may not assert quiet title against a mortgagee without first paying the outstanding debt on the property. *See Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted). Plaintiff has not alleged that he has paid the outstanding debt on the Property, or can do so. Therefore, the Court finds that there is little likelihood of success on this claim as well.

### i.  Lack of Standing to Conduct Foreclosure Sale

Although not listed as a separate cause of action, Plaintiff alleges that the foreclosure sale should be enjoined because "the alleged real party in interest is unable to prove standing to foreclose against and sell the property." TRO Mot. ¶ 12. In the Complaint, the Plaintiff alleges that "the note was . . . sold repeatedly to other parties who failed to properly register said sales with the court recorder's office in the county in which the property lies, thereby, obscuring the true holder of the note." Compl. ¶ 21. From this statement and allegations in the Complaint, the Court gathers that Plaintiff challenges the foreclosure sale because the trustee noticing the sale does not have possession of the Note. However, under California law, there is no requirement that the trustee have possession of the physical note before initiating foreclosure proceedings. *See, e.g., Yazdanpanah v. Sacramento Valley Mortg. Group*, No. C 09-02024 SBA, 2009 U.S. Dist. LEXIS 111557, at * 23-*25 (N.D. Cal. Nov. 30, 2009) (citing cases); *Wurtzberger v. Resmae Mortg. Corp.*, No. 2:09-cv-01718-GEB-DAD, 2010 U.S. Dist. LEXIS 51751, at *9-*11 (E.D. Cal. Apr. 29, 2010); *Benham v. Aurora Loan Servs.*, No. 09-2059 SC, 2010 U.S. Dist. LEXIS 11189, 2010 WL 532685 at *2-*3 (N.D. Cal., Feb. 9, 2010). Accordingly, to the extent Plaintiff intends to

challenge the foreclosure sale based on the trustee's failure to produce the Note, this claim is unlikely to succeed on the merits.

### j. Irreparable Harm

As set forth above, the probability of Plaintiff's succeeding on any of his claims is extremely low. Thus, the "likely to succeed" factor weighs against an injunction. When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure. *Gonzalez v. Wells Fargo Bank*, No. C 09-03444 MHP, 2009 U.S. Dist. LEXIS 101036, *20-22 (N.D. Cal. Oct. 29, 2009). On the other hand, the Court recognizes that loss of one's home constitutes irreparable harm, and the irreparable harm factor weighs in favor of an injunction. *Saba v. Caplan*, No. C 10-02113 SBA, 2010 U.S. Dist. LEXIS 76790, at *13-*14 (N.D. Cal. July 6, 2010). However, it does not appear that the balance of equities tips in Plaintiff's favor here. The Notice of Sale states that Plaintiff currently owes $411,158.20 on the loan described in the Note; the original principal was $365,000.00. *See* Notice of Sale, Note. Thus, it appears that Plaintiff has failed to make a substantial number of payments. It is not equitable for Plaintiff to continue to occupy the Property without making payments. Similarly, as the Plaintiff has not introduced anything to suggest the foreclosure sale was improperly noticed or set, it would not be in the public interest to enjoin the foreclosure sale from going forward. Finally, the Court may not issue an *ex parte* TRO except in "very narrow band of cases." *Reno Air Racing*, 452 F.3d at 1131. This case does not fit into the "narrow band" justifying an *ex parte* TRO, as defined by the Ninth Circuit. Accordingly, the Court DENIES Plaintiff's Motion for an *ex parte* TRO.

## IV. CONCLUSION

Plaintiff's Motion for a TRO is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: December 7, 2010

_____
LUCY H. KOH
United States District Judge

11
Case No.: 10-CV-05485-LHK
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER